THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK
et al., respondents,

*v.*

THE ERIE RAILROAD COMPANY and THE NEW YORK AND
GREENWOOD LAKE RAILROAD COMPANY, appellants.

(No. 65. On appeal of the railroad companies.)

THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK
et al., appellants,

*v.*

THE ERIE RAILROAD COMPANY and THE NEW YORK AND
GREENWOOD LAKE RAILROAD COMPANY, respondents.

(No. 81. On appeal of the city.)

[Argued June 30th, 1909. Decided November 15th, 1909.]

1. On a bill filed by a city against a railroad company to compel it to effect the crossing of its present tracks across a public highway in a city in some other manner than at the grade of said street, and for this purpose to construct and keep in repair good and sufficient bridges or passages over or under the said railroad tracks as at present constructed across said highway so that the passage of carriages, horses and cattle upon the street shall not be impeded thereby, and for further relief— *Held*, that the court of chancery correctly decided that the facts of the case did not warrant so drastic a remedy as track elevation or depression, but that it was unnecessary to determine whether the court of chancery had jurisdiction to order tracks to be elevated or depressed, and therefore that question is not passed upon or decided.

2. The relief afforded by a decree must conform to the case made out by the pleadings as well as the proofs, and that granted under the general prayer must be *secundum allegata et probata.*

3. Whether the court of chancery has jurisdiction or power to order railroad tracks crossing a highway to be removed therefrom, if they render the highway crossing dangerous for public use, on the ground that they have been illegally laid in such highway, is not passed upon or decided.

On cross-appeals from a decree of the court of chancery advised by Vice-Chancellor Stevens, whose opinion is reported in *75 N. J. Eq. (5 Buch.) 20.*

*Mr. James R. Nugent* and *Mr. Herbert Boggs,* for the city of Newark.

*Messrs. Cortlandt & Wayne Parker (Mr. Charles L. Corbin,* on the brief), for the railroad companies.

The opinion of the court was delivered by

VOORHEES, J.

These cases come into this court upon cross-appeals; that of the city of Newark from so much of the decree of the chancellor as denies a mandatory injunction, directing the defendants to effect their grade crossing over Summer avenue, in the city of Newark, in some other manner than at the grade of said avenue; that of the defendants, the railroad companies, from that part of the decree that adjudges that the two most northerly and the most southerly tracks laid across said avenue at grade are unlawful structures and impede the traffic upon the highway and interfere with its safe and convenient use by the public, and from that part of the decree that adjudges that the use, except as for a passing siding made by the defendants of the track lying between the most southerly track across said avenue, and known as Heller's switch track, and the eastbound main line track, impedes public travel on said avenue and unlawfully interferes with and impedes the passage of people, &c., using said avenue and renders the crossing unsafe, and that said use be prohibited, and commands the defendants to remove so much of said two most northerly tracks and the most southerly track as are laid within the lines of Summer avenue, and from using the remaining track above mentioned for any use whatever except for a passing siding for the sole purpose of shifting cars or trains of cars to and from the main line tracks so as to permit one car or train of cars to pass another car or train of cars while traveling on the main line tracks.

The appeals have been argued together in this court.

The facts of the case have been so clearly and with such careful detail set forth in the opinion of the learned vice-chancellor, reported in *75 N. J. Eq.* (*5 Buch.*) *20,* that it is needless to recount them here. Taking up the appeal of the city, we agree with the learned vice-chancellor in his conclusion that the facts of the case do not warrant so drastic a remedy as track elevation or depression, and that therefore on the merits of the case the appeal of the city should be dismissed, and the decree affirmed so far as that appeal has questioned it. But in placing our decision upon the grounds above stated, it becomes unnecessary to determine whether the court of chancery had jurisdiction to order the tracks to be elevated or depressed, and we therefore do not pass upon or decide that question.

In examining the appeal of the railroad companies, it will be necessary to consider the allegations and the prayer of the bill.

The prayer is for a mandatory injunction compelling the defendants to effect the crossing of the present tracks across Summer avenue in some other manner than at grade of said street, and for this purpose to construct, &c., bridges or passages over or under the said railroad tracks as at present constructed so that the passage of carriages, &c., shall not be impeded, and for general relief.

The opinion of the court below frankly states that "the allegations of the bill are so general that they present little more than the abstract question whether under any circumstances this court would compel a railroad company to elevate or depress its tracks," and later in the opinion the vice-chancellor states: "The bill, although primarily designed to enforce track elevation, is broad enough in its statements to warrant the giving of the relief indicated. There is a prayer, not only for depression or elevation of the tracks, but also for general relief."

.The allegations of the bill succinctly stated are as follows: After setting out the charters or certificates of incorporation of the New York and Greenwood Lake Railroad Company, and its several predecessors, and the lease of the railroad company to the Erie Railroad Company, the bill alleges that there are two main tracks operated by the Erie Railroad Company, and also

four additional tracks, two of which are sidings, making a total of six tracks where the railroad crosses said avenue, which form a serious impediment to travel upon the highway, and that the defendants do not keep in repair good and sufficient bridges or passages over or under the railroad; that the crossing of the tracks as now laid out at grade of the said street is difficult and dangerous; that passenger and freight trains cross with great frequency at high rates of speed, and that travelers are frequently held up and detained at the crossing; that the crossing of the street is attended with great inconvenience and danger and that a different method of crossing which will be safe to the public is imperatively demanded. Section 29 of the General Railroad law (*P. L. 1903 p. 660*) is then set out, followed by the charge that it is the duty of the railroads to have the crossing by their trains made in such manner as not to impede the public travel, and that for this purpose the railroads should have some other crossing than the grade crossing, either by depressing or elevating the tracks or by making necessary changes in the grade of the street, and that as to the right of the public to use the highway and the right of the companies to operate their railroads across a public highway with safety, the court of chancery has power to regulate and direct the manner in which the crossing shall be effected. Then follows the prayer for relief, as above set forth.

These statements give scarcely an intimation of any other relief being sought than elevation or depression, and there is certainly no semblance of a claim that any of the tracks as laid are illegal structures and should be taken up or their use interfered with.

The answer of the railroad companies to the bill was confined to a denial that the tracks formed an impediment and to a denial of the non-repair of bridges over them, and that the defendants had not performed their duty in that regard. Their answer further extends to a denial of the power of the court to compel them to eliminate the crossing as a level crossing. The answer seems to cover the entire bill, and yet in no way touches the question of the illegality of the tracks at the crossing.

At the trial it was indeed remarked by the court that it was possible that an order might be made that if the defendants desired to maintain six tracks they must elevate them, but if willing to put four tracks somewhere else, the road might still be safe and convenient. This was merely by way of suggestion by the court and in any aspect seemed primarily dependent upon a consent of the companies to a change of location of some of the tracks to avoid the alternative of elevating six tracks. So during the whole hearing it seems not to have been intimated that an injunction would issue grounded upon the illegal character of the *de facto* crossing. Aside from the consideration that ordinarily an injunction cannot be granted under a prayer for general relief, but must be the subject of a special prayer (*African M. E. Church* v. *Conover, 27 N. J. Eq. (12 C. E. Gr.) 161*), and it may be incidentally remarked that here we have no special prayer for an injunction of the character of that granted by the decree, the familiar rule must govern that the relief afforded by the decree must conform to the case made out by the pleadings as well as the proofs, and that granted under the general prayer must be *secundum allegata et probata.* *Jordan* v. *Clark, 16 N. J. Eq. (1 C. E. Gr.) 243; Francis* v. *Bertrand, 26 N. J. Eq. (11 C. E. Gr.) 213.* "In order to entitle the plaintiff to a decree under the general prayer different from that specifically prayed, the allegations relied upon must not only be such as to afford a ground for the relief sought, but they must have been introduced into the bill for the purpose of showing a claim to relief, and not for the mere purpose of corroborating the plaintiff's right to the specific relief prayed; otherwise the court would take the defendant by surprise, which is contrary to its principles." *1 Dan. Ch. Pl. & Pr. 381.*

The purpose of the statement in the bill that there were two main tracks and four additional tracks, seems to have been corroborative merely of the right to relief by means of elevation, by showing one of the elements of danger at the crossing. The statement did not have for its purpose a claim that any of such tracks were unwarranted by law.

21

The vice-chancellor alludes to this case as one of novel jurisdiction and the first suit of its kind ever brought in this state. It may be added that its importance is as great and far reaching as its novelty. In such a case it behooves us not to settle the important principles involved on grounds outside the issues, scantily supported by the proofs, and which at best seem to have been inadequately argued in the court below.

That part of the decree, therefore, appealed from by the railroad companies, must be reversed, because not within the scope of the bill but rested upon grounds not disclosed by the bill.

Here, again, it must be understood that no opinion is expressed as to the jurisdiction or power of the court to grant such relief upon a bill properly framed for that purpose.

The cause will be remitted to the court of chancery to the end that a decree be entered in accordance with the views above expressed.

No. 65.    On appeal of the railroad companies—

*For affirmance*—MINTURN, VROOM—2.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, BOGERT, GRAY, DILL, CONGDON—12.

No. 81.    On appeal of the city—

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE. REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VROOM, GRAY, DILL, CONGDON—14.

*For reversal*—None.